Filed 6/5/24  P. v. Smith CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062112 |
| v. | (Super. Ct. No. 21CF0566) |
| CHARLES EDWIN SMITH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Charles Edwin Smith appeals his convictions on the ground the trial court improperly overruled his objection to the prosecutor's use of a peremptory challenge. We disagree and affirm the judgment.

FACTS

Nicholas H. and Brandon B., co-managers of a restaurant in Orange, were talking in the restaurant's parking lot after work one night at about 11:30 p.m. when Smith approached them. Nicholas recognized Smith as someone who had come into the restaurant before and had been given water or soda and sent on his way. Smith asked Nicholas and Brandon for a drink, and they explained the restaurant was closed. Smith walked away.

A few minutes later, Smith approached Nicholas and Brandon again, running this time, and demanded they take him to a nearby grocery store to get some food and drinks. They declined. Smith became more aggressive and made a comment about having a gun. He reached his right hand toward the back of his waistband as if reaching for a gun. Nicholas and Brandon, believing Smith had a gun, put their hands up in the air.

Nicholas had unlocked his car when he noticed Smith approaching them the first time. About the time Smith reached his hand toward the back of his waistband, Nicholas's car automatically relocked, making a beeping noise. Smith told Nicholas, "If your car beeps one more time, I'm going to have you on your knees begging for your life." Smith then said to Brandon, "I'm gonna shoot you, take your belongings [and] I'm going to shoot your friend in the head."

Brandon offered to go to a nearby fast-food restaurant, buy Smith food, and bring it back. Smith refused, saying he did not trust Brandon. Brandon then offered to take Smith to the fast-food restaurant. Smith agreed, calmed down, and got into Brandon's car. Brandon drove Smith to the fast-food restaurant. Nicholas, who was concerned for Brandon's safety, also drove to the fast-food restaurant, parked and waited while Brandon and Smith went through the drive-thru, and then followed Brandon and

2

Smith back to the restaurant parking lot where Smith initially approached them. Both cars parked. Smith remained in Brandon's car even though Brandon repeatedly asked him to get out. After about 10 to 20 minutes, when no one exited from Brandon's car, Nicholas called 911. The police arrived and took Smith into custody.

Smith was charged with kidnapping Brandon (Pen. Code, § 207, subd. (a), Count 1), false imprisonment of Brandon by violence or menace (*Id.*, §§ 236 & 237, subd. (a), Count 2), making criminal threats against Brandon (*Id.*, § 422, subd. (a), Count 3), and making criminal threats against Nicholas (*Id.*, § 422, subd. (a), Count 4). It was further alleged Smith had suffered three prior strike convictions (*Id.*, §§ 667, subds. (d) & (e)(2)(A), 1170.12, subds. (b) & (c)(2)(A)) and two prior serious felony convictions (*Id.*, § 667, subd. (a)(1)).

The jury found Smith not guilty of Count 1 as charged but guilty of the lesser included offense of false imprisonment by violence or menace. He was found guilty of Counts 2 through 4. Smith admitted all priors. The trial court partially granted his motion to strike the priors, striking two prior strike convictions and one prior serious felony conviction. The court sentenced Smith to state prison for a total term of 10 years and four months.

Smith appeals his convictions on the ground the trial court improperly overruled his objection to the prosecutor's improper use of a peremptory challenge to dismiss a juror based on her gender.

DISCUSSION

I.

JURY SELECTION

At the outset of trial, the trial court explained the case to the prospective jurors as follows: "In general terms, this case is about the defendant, a homeless man, approaching two young men at closing time outside of the pizzeria that they worked at and insisting [on] food from them. Believing the defendant was armed, the young men

3

took the defendant to get food.  The entire event lasted about 45 minutes.  Defendant was not actually armed and no one was injured."

The trial court then asked the prospective jurors to each answer 10 questions.  The questions were not made part of the record but appear to have been basic preliminary inquiries, including questions about the prospective juror's residence, occupation, marital status, and the like.  The final question appears to have been whether the prospective juror was able to be fair.  When it came time for Juror 103 to answer the questions, she stated she was the "CEO of a company that sells and represents food to retail grocers throughout the west."  In answering the final question, Juror 103 stated:  "I believe I can be a fair juror.  We do—do a tremendous amount of gift act [sic] to food-insecure people.  We volunteer at [a particular charity], serving food.  And we donate there.  We—we have a lot of—we have a big effort to give back to the communities that we're in.  I think I can still be fair, but it is a very key initiative for us, and it is my—it is my initiative." [1]  The court summarized Juror 103's response by stating:  "I think what I'm hearing is—my words—that you're sympathetic to the defendant."  Juror 103 replied:  "I'm sympathetic to anyone who has [sic] does not have the ability to have food."

During follow-up questioning, defense counsel asked Juror 103 if she could set aside her sympathies and decide the case based on the evidence and elements.  Juror 103 answered, "I *think* I can do that."  (Italics added.)  The prosecutor asked Juror 103 whether she would bring her passion for providing food to those who may be homeless into the deliberation room, and Juror 103 answered, "I *think* I will have a strong feeling of the needs for Mr. Smith personally, but I do not *think* that will change my decision because that's my job is to listen to the facts of the case."  (Italics added.)

---

[1]  In addition to describing her company's "very key initiative" to provide food to food-insecure people, Juror 103 indicated she and her husband do volunteer work, as a family, providing food to homeless individuals.

The prosecutor sought to dismiss Juror 103 by peremptory challenge. Defense counsel objected on the ground the challenge was motivated by Juror 103's female gender in violation of Code of Civil Procedure section 231.7.[2] As required by section 231.7, subdivision (c), the prosecutor stated the reasons for the challenge. She expressed concern about Juror 103's repeated statements that she *thought* she could be fair. The prosecutor commented, "there's a big difference between 'I think' and 'I will'" and explained she was seeking to excuse Juror 103 not because of the juror's gender but because the prosecutor did not believe Juror 103 could be a fair and impartial juror based on Juror 103's sympathy for people who could not get food and related inherent bias toward Smith.

In response, the court stated, "the analysis on peremptories is not whether a juror can be fair or not" and asked the prosecutor for a further explanation.[3] The prosecutor replied, "It has to do with, like I said, [Juror 103's] inherent bias and her sympathy towards the defendant in this case due to the nature of her occupation and her work. I think those are directly tied." The court then stated, "occupation can no longer be used as a basis."[4] The prosecutor reiterated she was challenging Juror 103 based on the juror's passion and mission to help people who face food insecurity. The court stated it was "satisfied that the prosecutor's explanations that, effectively, this juror has too much sympathy for food-insecure people, such as perhaps the defendant—and that bias,

---

[2] All further statutory references are to the Code of Civil Procedure.

[3] The court's understanding was incorrect. A peremptory challenge may be based on a prospective juror's perceived inability to be fair and impartial. (§ 231.7, subd. (e).)

[4] Under section 231.7, subdivision (e)(10), a peremptory challenge based on a prospective juror's "[e]mployment in a field that is disproportionately occupied by members listed in subdivision (a) or that serves a population disproportionately comprised of members of a group or groups listed in subdivision (a)" is presumed to be invalid. (The groups listed in subdivision (a) are identified in Section II, below.) However, occupation, generically, is not a presumptively invalid reason for a peremptory challenge under section 231.7.

in this Court's mind, has nothing to do with gender, and the Court's going to accept the peremptory challenge."

## II.

### PEREMPTORY CHALLENGES UNDER SECTION 231.7

Smith argues his conviction should be overturned because Juror 103 was dismissed based on her gender in violation of section 231.7.[5]  Enacted in 2020, section 231.7 prohibits the use of "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups" (the prohibited factors).  (*Id.,* subd. (a); Stats. 2020, ch. 318, § 1, subd. (b).)

Section 231.7 is designed to address and, so far as is possible, eliminate both purposeful discrimination and implicit unconscious bias in the jury selection process.  (*People v. Uriostegui* (2024) 101 Cal.App.5th 271, 277–278.)  "In enacting section 231.7, the Legislature acknowledged the impact of cognitive implicit bias on the use of peremptory challenges. [Citation.]  It also noted 'that it can be difficult and often impossible for the trial judge to determine whether the lawyer making the challenge actually intended to discriminate.  Trial courts rarely even require attorneys to present their reasons for excluding a juror, and when reasons are given, judges must rely on a subjective test that requires the court to attempt to determine the actual motivation of the attorney challenging a potential juror.  Thus, even when judges require lawyers to provide

_____

[5]  Section 231.7 applies to all criminal jury trials in which jury selection began on or after January 1, 2022.  (*Id.*, subd. (i).)

6

reasons for a challenge, both the trial courts and the reviewing courts have been strongly inclined to accept whatever justifications are offered.'" (*Id.,* at p. 278.)

Pursuant to section 231.7, subdivision (b), a party may object to another party's peremptory challenge as improper on the ground that it seeks to remove a juror based on a prohibited factor. Once such an objection is made, the party seeking to challenge the juror must "state the reasons the peremptory challenge has been exercised." (*Id.,* subd. (c).) The trial court must then evaluate "the reasons given to justify the peremptory challenge in light of the totality of the circumstances. The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge. If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained." (*Id.,* subd. (d).) The court must explain the reasons for its ruling on the record. (*Ibid.*)

Section 231.7, subdivision (e) lists 13 reasons for a peremptory challenge that are presumed to be invalid if given as the reason for a peremptory challenge.[6] If a

---

[6] The presumptively invalid reasons for a peremptory challenge are: "(1) Expressing a distrust of or having a negative experience with law enforcement or the criminal legal system. [¶] (2) Expressing a belief that law enforcement officers engage in racial profiling or that criminal laws have been enforced in a discriminatory manner. [¶] (3) Having a close relationship with people who have been stopped, arrested, or convicted of a crime. [¶] (4) A prospective juror's neighborhood. [¶] (5) Having a child outside of marriage. [¶] (6) Receiving state benefits. [¶] (7) Not being a native English speaker. [¶] (8) The ability to speak another language. [¶] (9) Dress, attire, or personal appearance. [¶] (10) Employment in a field that is disproportionately occupied by members listed in subdivision (a) or that serves a population disproportionately comprised of members of a group or groups listed in subdivision (a). [¶] (11) Lack of employment or underemployment of the prospective juror or prospective juror's family member. [¶] (12) A prospective juror's apparent friendliness with another prospective juror of the same group as listed in subdivision (a). [¶] (13) Any justification that is similarly applicable to a questioned prospective juror or jurors, who are not members of

party articulates one of those 13 reasons as the basis for the peremptory challenge, the challenge must be denied unless "the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's [prohibited factors], and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (*Ibid.*) "To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of the peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.,* subd. (f).)

In sum, if a party seeking to exercise a peremptory challenge provides reasons that are not identified in section 231.7, subdivision (e), an objection to the challenge will be overruled unless the court determines an objectively reasonable person would view the challenge as having been made based on one of the prohibited factors. (*Id.*, subd. (d).) If, on the other hand, a party seeking to exercise a peremptory challenge articulates one of the 13 presumptively invalid reasons, the peremptory challenge will be found invalid unless the party making the challenge can show, by clear and convincing evidence, that the reasons are unrelated to any of the prohibited factors *and* that the stated reasons specifically relate to the prospective juror's ability to be fair and impartial. (*Id.*, subds. (e) & (f).)

### III.

#### STANDARD OF REVIEW

Denial of an objection made under section 231.7, subdivision (b) is reviewed "de novo, with the trial court's express factual findings reviewed for substantial

---

the same cognizable group as the challenged prospective juror, but were not the subject of a peremptory challenge by that party." (§ 231.7, subd. (e).)

evidence. . . . The reviewing court shall consider only the reasons actually given. . . . Should the appellate court determine that the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Id.,* subd. (j).)

## IV.

### THE OBJECTION

This case was described to the prospective jurors as a case about a homeless man seeking food. Juror 103 was open and honest in describing her sympathy for anyone who, like Smith, experiences food insecurity. When the prosecutor sought to dismiss Juror 103 by peremptory challenge, defense counsel objected on the ground the challenge was motivated by the juror's female gender. The trial court followed the proper procedure under section 231.7 and asked the prosecutor to state her reasons for the challenge. The prosecutor explained she was concerned about Juror 103's ability to fully set aside her sympathy for food-insecure people and be fair and impartial. Pursuant to section 231.7, subdivision (d), the court evaluated the reasons given, accepted them, overruled the objection, and explained its reasons on the record. Under subdivisions (b)-(d) of section 231.7, the correct procedure was followed and the court's analysis was proper.

In his appeal, however, Smith claims, for the first time, the prosecutor's stated reasons were "presumptively invalid" and the court therefore was required to make the findings mandated by section 231.7, subdivisions (e) and (f). According to Smith, the prosecutor sought to dismiss Juror 103 because she was employed in a "nurturing" occupation and that is a presumptively invalid reason for a peremptory challenge.

Employment in a nurturing occupation is not, however, one of the 13 presumptively invalid reasons identified in the statute. (§ 231.7, subd. (e).) The only presumptively invalid reason that addresses employment is "[e]mployment in a field that is disproportionately occupied by members listed in subdivision (a) or that serves a

9

population disproportionately comprised of members of a group or groups listed in subdivision (a)." (*Id.,* subd. (e)(10).) Nothing in the record suggests Juror 103 was employed in a field disproportionately occupied by or providing service to a "race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation." (*Id.*, subds. (a), (e).)[7] Juror 103 identified her occupation as "CEO of a company that sells and represents food to retail grocers throughout the west." Further, even if employment in a nurturing occupation were a presumptively invalid reason, employment as a CEO of a food wholesaler or distributor does not appear to be a particularly nurturing occupation and Smith does not provide law or argument to support his argument that it is.

Finally, Smith argues the trial court improperly "coached the prosecution to provide a valid reason" for the peremptory challenge of Juror 103 "rather than objectively analyzing the reasons actually stated." Even if the court's comments (including its incorrect description of the statute) and its questions to the prosecutor could fairly be characterized as coaching, it would not change our analysis because, from beginning to end, the prosecutor's stated reasons for challenging Juror 103 related to Juror 103's sympathy for and perceived inherent bias in favor of individuals, like Smith, who face food insecurity and her hesitance to fully commit to being able to set aside that sympathy in rendering a verdict. An objectively reasonable person would not view Juror 103's

---

[7] Smith cites *People v. Jaime* (2023) 91 Cal.App.5th 941 (*Jaime*), in which the prosecution sought to exercise a peremptory challenge based on the prospective juror's negative experience with law enforcement—a ground specified as presumptively invalid under section 231.7, subdivision (e)(1). (*Jaime, supra,* at pp. 944–945.) When asked for reasons to overcome the presumptively invalid reason, the prosecution simply reiterated the prospective juror's negative experience with law enforcement. (*Id.* at p. 947.) *Jaime* is not applicable to our analysis because the prosecutor here did not base the peremptory challenge on a presumptively invalid reason.

gender as a factor in the prosecutor's use of the peremptory challenge, and the trial court did not err in overruling the objection.

## DISPOSITION

The judgment is affirmed.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.

11